UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGATON T. GUALBERTO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 18-cv-05974-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 4 |

## I.     BACKGROUND

Plaintiffs are Virginia Gualberto and the 2017 Agaton & Virginia Gualberto Family Trust ("Plaintiffs"). Defendants are Wells Fargo, N.A. and the Bank of New York Mellon ("Defendants"). "On May 8, 2007, Plaintiff Virginia Gualberto executed a Deed of Trust and Adjustable Rate Note 'Pick- A-Payment Loan.'" First Amended Complaint ("FAC") ¶ 6. Golden West Savings Association Service Company was the original trustee, and World Savings Bank FSB was the original lender and loan servicer for Plaintiffs' loan. *Id.* ¶ 7. Wachovia Bank purchased Golden West Financial and its subsidiary World Savings. *Id.* ¶ 8. Wachovia Mortgage took over as servicer of Plaintiffs' loan. *Id.* In 2008, Defendant Wells Fargo purchased Wachovia and became the servicer of Plaintiffs' loan. *Id.* ¶ 9. Defendant Wells Fargo claims to be the beneficiary and owner of the loan. *Id.* ¶ 65; Motion to Dismiss ("Mot.") at 11. On April 19, 2018, Defendant Wells Fargo, as the alleged beneficiary, filed a Substitution of Trustee and on the same day filed a Notice of Default on Plaintiffs' property. FAC ¶ 22. "[O]n July 30, 2018, a Notice of [T]rustee's sale was recorded." *Id.* "On August 23, 2018, Plaintiffs' property was sold at a trustee's sale." *Id.* ¶ 24.

However, Plaintiffs allege that this sale must be unwound because World Savings Bank sold Plaintiffs' mortgage loan to the WSR 30 Trust before the closing date of the trust on August 28, 2007. *Id.* ¶ 10. Thus, when Defendant Wells Fargo purchased Wachovia (previously World Savings Bank), Defendant Wells Fargo did not acquire Plaintiffs' mortgage loan; the loan had already been sold to the trust. For this reason, Plaintiffs contend that Wells Fargo did not have legal authority to foreclose on their home. The FAC requests the Court unwind the foreclosure sale, cancel the instruments, and order Defendant Wells Fargo to return loan payments to Plaintiffs as they were unjustly enriched by accepting the payments. *See generally* FAC Counts I-II; IV-V. Plaintiffs appear to base their claim that the mortgage was sold to the WSR 30 Trust on the fact that "Wachovia securitized substantially all of its residential mortgage loans," *id.* at 10, and their loan was consistent with the types of loans sold to the WSR 30 Trust. *Id.* ¶ 12.

Plaintiffs, however, present no direct documentary proof of sale of their mortgage to the trust or sufficient allegations for the Court to plausibly believe that Wells Fargo does not own the loan.[1]

## II. **DISCUSSION**

A. Request for Judicial Notice

Defendants request the Court judicially notice the following items:

- Exhibit A: Deed of Trust recorded on May 16, 2007 in the San Mateo County Recorder's Office as document number 2007-075673 as to property located at 1460 Crystal Drive, Hillsborough, San Mateo County, California 94001-7310.

- Exhibit B: Substitution of Trustee recorded on April 5, 2017 in the San Mateo County Recorder's Office as document number 2017-029641.

- Exhibit C: Notice of Default recorded on April 5, 2017 in the in the San Mateo County

---

[1] Plaintiffs do not contend that any of the recorded documents named the WSR 30 Trust as having any interest in their loan. Defendant BNY Mellon is the trustee of the WSR 30 Trust, but Plaintiffs argue that Defendant BNY Mellon similarly has no claim to the loan because "it never received an effective assignment of Plaintiffs' mortgage note" pursuant to California Civil Code § 2934a. *Id.* ¶ 25. Plaintiffs assert that California Civil Code § 2934a "requires that all (valid) beneficiaries must execute and acknowledge a Substitution of Trustee", which BNY Mellon did not do. *Id.* Evidently, under Plaintiffs' theory, no one owns their mortgage; thus, implying their obligation under loan mortgage simply eviscerated.

2

1 Recorder's Office as document number 2017-029642.

- Exhibit D: Notice of Trustee's Sale recorded on July 18, 2017 in the San Mateo County Recorder's Office as document number 2017-061101, setting a Trustee's Sale date for August 16, 2017.

- Exhibit E: Notice of Rescission of Notice of Default recorded on December 1, 2017 in the San Mateo County Recorder's Office as document number 2017-107477.

All these items are part of the public record and are therefore appropriate to be judicially noticed, as their authenticity is not questioned. *See Miller-Swift v. Mortg. Elec. Registration Sys., Inc.*, No. 17-CV-03408-VC, 2017 WL 6759380, at *1 (N.D. Cal. Oct. 16, 2017) ("Each document was recorded in the Alameda County Recorder's Office and is therefore part of the public record."); *see also* Fed. R. Evid. 201; *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Thus, the Court judicially notices all of these publicly recorded documents.

B. Legal Standard

The Federal Rules of Civil Procedure require a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A complaint must state more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a 12(b)(6) motion to dismiss, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While "allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs", "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

C. HOLA Preemption

Plaintiffs' claim is that Defendants never had title to their loan because World Savings Bank sold it to the WSR 30 Trust prior to World Savings Bank's sale to Wachovia and subsequent

3

sale to Wells Fargo. Defendants contend that these claims, which ultimately are predicated on a defective chain of title, are preempted by the Home Owners' Loan Act of 1933 ("HOLA").

HOLA was enacted to provide relief for those with home mortgage debts during the Great Depression of the 1930's. *See Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 971 (9th Cir. 2017). "HOLA empowered the regulatory body, which became the [Office of Thrift Supervision ("OTS")], to authorize the creation of federal savings and loan associations, to regulate them, and, by its regulations, to preempt conflicting state law." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). Congress, by way of HOLA, gave OTS "broad authority to issue regulations governing thrifts." *Id.* (citing 12 U.S.C. § 1464).

> In order to provide thrift institutions for the deposit of funds and for the extension of credit for homes and other goods and services, the Comptroller of the Currency is authorized, under such regulations as the Comptroller of the Currency may prescribe--(1) to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks), and (2) to issue charters therefor, giving primary consideration of the best practices of thrift institutions in the United States. The lending and investment powers conferred by this section are intended to encourage such institutions to provide credit for housing safely and soundly.

12 U.S.C.A. § 1464 (West). In furtherance of their role "[a]s the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2." *Silvas*, 514 F.3d at 1005.

Section 560.2(a) states that pursuant to HOLA,

> OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations.

12 C.F.R. § 560.2(a). Section 560.2(b) provides illustrative examples of "the types of state laws preempted by paragraph (a) of [section 560.2.]" 12 C.F.R. § 560.2(b). This includes

4

"without limitation, state laws purporting to impose requirements regarding: . . . (10) Processing, originating, servicing, sale or purchase of, or investment or participation in, mortgages[.]" *Id.* This Court has previously discussed HOLA preemption and recognized that "HOLA contains a broad field preemption clause." *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1017 (N.D. Cal. 2012) (Chen, J.). now

Section 560.2(c) sets out the "[s]tate laws that are not preempted." 12 C.F.R. § 560.2(c). State laws of the type laid out in section 560.2(c) "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section[.]" *Id.* Section 560.2(c) lists the following as exempt from preemption: "(1) Contract and commercial law; (2) Real property law; (3) Homestead laws specified in 12 U.S.C. 1462 § a(f); (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." *Id.*

OTS also provided the framework for determining whether a state law is preempted under the OTS regulation.

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sept. 30, 1996); *see also Silvas*, 514 F.3d at 1005.

In conducting the above analysis, "the court does 'not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations of maintaining the cause of action.'" *Gens v. Wachovia Mortg. Corp.*, No. 10-CV-01073-LHK, 2011 WL 9121, at *9 (N.D. Cal. Jan. 3, 2011), *aff'd,* 503 F. App'x 533 (9th Cir. 2013) (quoting

5

*Naulty v. GreenPoint Mortg. Funding, Inc.*, Nos. C 09–1542, C 09–1545, 2009 WL 2870620, at *4 (N.D. Cal. 2009)). The Ninth Circuit has described HOLA as a "radical and comprehensive response to the inadequacies of the existing state system," that is "so pervasive as to leave no room for state regulatory control." *Id.* at 1004–05 (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921).

Defendants assert that Plaintiffs' claims "fall squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with 'investment' in mortgages." Mot. at 9 (citing *Terrazas v. Wells Fargo Bank, N.A.*, No. 13–cv–00133–BEN–MDD, 2013 WL 5774120 (S.D. Cal. Oct. 24, 2013).

Plaintiffs argue that their causes of action are not preempted by HOLA because: (1) the National Banking Act does not preempt their causes of action; thus, HOLA similarly does not preempt this cause of action; (2) Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. §§5301-5641 changed HOLA preemption in significant ways (including that HOLA no longer occupies field preemption); and (3) HOLA does not preempt Plaintiffs' claims because this cause of action does not involve lending but is actually about foreclosure. Opp. at 12–16.

Plaintiffs do not challenge whether HOLA applies generally to Defendants or the Deed of Trust securing their loan from World Savings Bank, they only challenge the application of HOLA preemption as it relates to Plaintiffs' causes of action.

1. HOLA Application to Defendants

At the hearing on this matter Plaintiffs' counsel confirmed that Plaintiffs do not challenge the application of HOLA preemption to Wells Fargo as a non-savings bank. *See McShannock v. JP Morgan Chase Bank N.A.*, No. 18-CV-01873-EMC, 2018 WL 6439128, at *8 (N.D. Cal. Dec. 7, 2018) ("HOLA preemption [applies] only to conduct occurring before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA.") (Quoting *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014).

In this case, Plaintiffs' FAC alleges that World Savings Bank sold its interest in their loan to the WSR 30 Trust before transferring its assets to Wachovia and then to Wells Fargo. FAC ¶

25. Therefore, the actions at issue here are based on the actions of World Savings Bank, a savings bank. *See Terrazas*, 2013 WL 5774120, at *5 (finding that Plaintiffs' claims were preempted by HOLA because "Plaintiffs' claims . . . relate to the actions of the originator of the loan and its successor entities in 'servicing' the mortgage.").

Thus, Defendants are entitled HOLA preemption even though Wells Fargo is a successor to World Savings Bank and not itself a savings bank.

### 2. HOLA Application to Plaintiffs' Causes of Action

Defendants assert that HOLA preempts all of Plaintiffs' claims. Mot. at 8–10. Defendants rely on the proposition that "all of Plaintiffs' claims are preempted because they are based on their challenge to Defendants' right to foreclose. This falls squarely within § 560.2(b)(10)'s specific preemption of state claims that deal with 'investment' in mortgages." Mot. at 9 (citing *Terrazas*, 2013 WL 5774120). Section 560.2(b)(10) states: "the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding: . . . (10) Processing, originating, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. 560.2(b).

#### a. HOLA Application and the Dodd-Frank Act

Plaintiffs argue that HOLA's field preemption no longer applies following the Dodd-Frank Act. Opp. at 13–14. However, as this Court has recently explained in *McShannock v. JP Morgan Chase Bank*, Dodd-Frank's changes to HOLA preemption apply "to any contract entered into or before July 21, 2010, by national banks, Federal savings associations." *McShannock*, 2018 WL 6439128, at *7 n. 3 (quoting 12 U.S.C. § 5553). Thus, Dodd-Frank "on its face preserves the application of the original HOLA preemption scheme established by OTS at 12 C.F.R. § 560.2 to contracts." *Id.* In this case, the FAC states that the Deed of Trust was executed on May 8, 2007, before the Dodd-Frank Act was enacted (July 21, 2010). FAC ¶ 6. For this reason, the changes to preemption arising from the Dodd-Frank Act do not apply to Plaintiffs' causes of action. Thus, HOLA field preemption still applies.

#### b. HOLA and NBA

Plaintiffs contend that because the National Banking Act is rooted in conflict preemption,

not field preemption, HOLA similarly cannot occupy field preemption. However, as this Court has noted, "HOLA's strict field preemption analysis . . . bears little relation to the NBA's more flexible conflict preemption analysis." *Tamburri*, 875 F. Supp. 2d at 1018. Therefore, the NBA's conflict preemption has no bearing on HOLA's field preemption. HOLA's field preemption stands on its own.

### c. HOLA Preemption and the Claims Presented in the FAC

Finally, Plaintiffs challenge HOLA preemption relying on the assertion that the claims at issue here are more akin to the section 560.2(c) HOLA preemption exemption for real property law, than the section 560.2(b)(10) express preemption of state laws regulating loan servicing, purchasing, or investing. However, the challenge here does not concern servicing of the loan. Instead, Plaintiffs challenge the foreclosure of their property based on a lack of title to the property following a series of loan purchases. They allege that Wells Fargo never had proper title to the property because the originating savings bank sold the loan prior to Wells Fargo's purchase of the loan.

Numerous courts have addressed similar claims and found that HOLA preemption applies. In *Terrezas v. Wells Fargo Bank*, plaintiffs made allegations like those presented here. They alleged, their loan originator World Savings Bank executed a note for a Deed of Trust, and then World Savings Bank allegedly sold and transferred the note to an unknown beneficiary. *Terrazas*, 2013 WL 5774120, at *1. The court in *Terrezas* found that despite plaintiffs raising nine separate causes of action, including claims for cancellation of instruments and a request to set aside a trustee's sale, their claims were not real property issues as contemplated in § 560.2(c)'s exceptions to preemption, but rather "their claims [were] all founded upon the allegation that Wells Fargo [was] not the true owner of the Note or Deed of Trust, and therefore had no authority to either service the loan or to foreclose upon the Plaintiffs' home." *Id.* at *5. The court found that "Plaintiffs' claims therefore relate to the actions of the originator of the loan and its successor entities in 'servicing' the mortgage. As such, Plaintiffs' state law claims fall squarely within the scope of § 560.2(b)(10), which covers 'Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'" *Id.* at *5.

This Court has addressed a similar issue where the crux of the complaint was "essentially that Defendants wrongfully foreclosed" on plaintiff's home and "Defendants did not have authority to foreclose" in part because MERS had "sold the Deed of Trust over and over[,] and the true beneficiary is unknown and has separated the Note and Deed of Trust making the deed of trust null and void." *Castillo*, 2012 WL 1213296, at *5. In that case, this Court recognized that "claims, based on Defendants' alleged failure to follow proper procedures in maintaining and servicing a loan and failure to demonstrate their authority to foreclose, have consistently been determined to fall under the umbrella of claims preempted by HOLA." *Id.*; *see also Winding v. Cal–W. Reconveyance Corp.*, CV F 10–0041 LJO GSA, 2011 WL 221321, at *12 (E.D. Cal. Jan. 24, 2011) ("Wells Fargo characterizes the 'heart' of the complaint's claims as 'negotiable instrument' transfer and ownership and that allegations to such effect fall within section 560.2(b)(10) as a challenge to a 'sale or purchase of a 'mortgage' originated by a saving bank. Wells Fargo is correct that section 560.2 preempts the complaint's allegations as to misconduct surrounding foreclosure originating from negotiable instrument issues. HOLA preemption further warrants dismissal of the complaint's claims given that they address 'sale or purchase of . . . or participation in, mortgages.'"); *Hague v. Wells Fargo Bank, N.A.*, C11–02366 TEH, 2011 WL 6055759, at *4 (N.D. Cal. Dec. 6, 2011) ("[C]laims arising from the transfer of negotiable instruments fall into the 'sale or purchase' provision of section 560.2, making claims of misconduct arising from the transfer of such instruments in a foreclosure proceeding preempted by HOLA.")); *Lindberg v. Wells Fargo Bank N.A.*, No. CV C 13-0808 PJH, 2013 WL 3457078, at *3 (N.D. Cal. July 9, 2013) (holding that despite "plaintiff [alleging] that Wells Fargo lacks standing to foreclose, because it is not in possession of the original note, because the chain of title to the subject property has been broken, and because plaintiff's loan has been securitized, which extinguishes Wells Fargo's interest in the subject property", "HOLA preemption provides an independent basis for dismissing these 'standing to foreclose' claims."); *Thomas v. Deutsche Bank Nat. Tr.*, No. C 12-00472 CRB, 2012 WL 1600434, at *3 (N.D. Cal. May 7, 2012) (where "Plaintiff's main argument is that the loan was securitized into a REMIC trust, and that this action divested the lender of interest in the Note, and has tainted all the foreclosure procedures", the court

9

held "that HOLA preempts all of Plaintiff's state law claims that are based upon the underlying alleged securitization of the loan, and the issues stemming from it.").

As noted, in this case, the claims at bar similarly concern chain of title: whether Defendant Wells Fargo owns the mortgage loan or whether World Savings Bank sold the loan to the WSR 30 Trust prior to transfer to Wells Fargo. It is thus likewise preempted by section 560.2(b)(10), as the claims in this matter deal with the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10).

Plaintiffs cite two cases to support their contention that HOLA does not preempt their claims. First, Plaintiffs cite to *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010) for the proposition that the process of foreclosure it not preempted by HOLA. However, *Mabry* involved a different issue, as that case dealt with the *process* of foreclosure, not the sale of a loan affecting the ownership of the mortgage loan and thus the ability foreclose. *See Mabry*, 185 Cal. App. 4th at 217 ("We agree with the Mabrys that the *process of foreclosure* has traditionally been a matter of state real property law." (Emphasis in original)). The court in that case dealt with the specific issue of whether Civil Code section 2923.5 was preempted by HOLA. *Id.* at 228–31. Section 2923.5 deals with Notice of Default. Plaintiffs do not contend that Wells Fargo failed to follow a procedure in the foreclosure process. Plaintiffs' claims instead arise from the question of whether World Savings Bank sold Plaintiffs' mortgage loan to the WSR 30 trust and whether Wells Fargo ever actually purchased the mortgage loan. Thus, *Mabry* is inapposite.

Plaintiffs also cite to *Cheung v. Wells Fargo Bank, N.A* to support their contention that their claims are not preempted by HOLA. *Cheung* involved allegations similar to those presented here:

> Plaintiffs base this suit on the assertion that Wells Fargo never became the beneficiary of their mortgage with World Savings Bank and thus lacked authority to foreclose plaintiffs' property. Plaintiffs allege that World Savings Bank extinguished its interest in the loan through a failed attempt to sell and securitize it into a mortgage-backed security trust held by the Bank of New York as trustee. According to the plaintiffs, this sale and securitization did not close by the deadline in the securitization agreement and therefore the mortgage was never transferred to the trust. Plaintiffs argue the result of this failed sale and securitization is that the mortgage neither remained with World Savings Bank nor transferred to the

10

> Bank of New York, but instead became the property of an unknown beneficiary. Plaintiffs then conclude that because World Savings Bank lost its interest in the loan, Wells Fargo did not obtain the mortgage when it succeeded World Savings Bank. Similarly, plaintiffs assert Bank of New York, the trustee to whom World Savings Bank intended to transfer the mortgage, never acquired any interest in the loan and likewise had no interest to transfer to Wells Fargo.

*Cheung*, 987 F. Supp. 2d 972, 975 (2013). In that case, defendant argued that "*any* claim under state law, including any claims relating to the foreclosure *process*, are preempted," and the court there found that "there is simply no basis to find that HOLA precludes claims based on the alleged failures to conduct non judicial foreclosures in conformance with the requirements of California law." *Id.* at 979 (emphasis in original). The court held that "[a] lender cannot on the one hand rely on California law as the foundation for its right to conduct a non judicial foreclosure, while on the other hand ignoring any restrictions on procedural requirements that are part of that process under California law." *Id.* Here, Defendants are not alleged to have "ignor[ed] any restrictions on procedural requirements" of foreclosure. The crux of the alleged misconduct is not the actual foreclosure proceedings, but is instead on Defendants' chain of title.

Accordingly, preemption applies.

D. <u>Failure to State a Claim</u>

Defendants contend Plaintiffs failed to allege sufficient factual allegations that Defendant Wells Fargo did not have an interest in the Deed of Trust. Mot. at 10. Defendants contend that "Plaintiffs advance a misguided theory that the Loan is owned by BNY Mellon and not Wells Fargo, based wholly on their unsupported and thereby completely speculative, premise that their Loan 'was sold to the [Series 30 Trust] on or before the Trust's closing date.'" Mot. at 8 (quoting FAC ¶ 10) (alterations in original). Defendants argue that Plaintiffs' claim that their loan was sold to the WSR 30 Trust is entirely speculative and not based on factual allegations. Mot. at 8. They argue that Plaintiffs fail to assert any "concrete facts." *Id.*

"In California, a 'deed of trust containing a power of sale . . . conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security for repayment of [a] loan to [a] lender, or 'beneficiary.'" *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 972 (N.D. Cal. 2012) (Chen, J.) (quoting *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334 (2008)) (marks

11

1  of omission in original). "Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a Notice of Default and initiate nonjudicial foreclosure." *Id.* at 973.

It is uncontested that Plaintiffs' loan was owned by World Savings Bank. In the instant case, the documents indicate Wells Fargo held valid title to Plaintiffs' mortgage loan. Defendants' Exhibit A is a Deed of Trust signed by Plaintiff Gualberto. Docket No. 4-2 ("Defendants' Ex. A"). Defendants' Exhibit H is a Substitution of Trustee which recognizes that Plaintiff Gualberto was the original trustor, Golden West Savings Association was the original trustee, and World Savings Bank was the original beneficiary. Docket No. 4-2 ("Defendants' Ex. H"). Further, this document shows that Wells Fargo is the successor by merger for this loan. *Id.* Plaintiffs assert that the chain of title was in fact defective because of a prior transfer of the loan to the WSR 30 Trust. In support, the FAC merely alleges that a substantial number of Wachovia loans were sold to the WSR 30 Trust and that Plaintiffs' loan is consistent with the loans in the WSR 30 Trust. Beyond this fact, Plaintiffs do not claim to know that their loan was in fact sold to the WSR 30 Trust. It cites no document directly proving their supposition. Plaintiffs' assertion is based purely on inference, a speculative one at that.

Courts have rejected similar claims. In *Hammons v. Wells Fargo Bank, N.A.*, a court dismissed a complaint because "[a]dding it up, plaintiffs offer the essentially bare allegation that Wells Fargo lacked authority to foreclose, and do so in the face of contrary evidence that appears plainly to belie their assertion. As such, the FAC does not contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Hammons v. Wells Fargo Bank, N.A.*, No. 15-CV-04897-RS, 2016 WL 845295, at *5 (N.D. Cal. Mar. 4, 2016) (quoting *Iqbal*, 556 U.S. at 678). The court in that case ultimately held that the FAC lacked factual allegations to state a claim for relief that was plausible on its face. *Id.*

Plaintiffs' complaint here fails for the same reason. There is no plausible claim that Defendant Wells Fargo did not actually have legal title based merely on the fact that Wachovia sold "substantially all" of its mortgage loans. Plaintiffs do not contend that the public documents that Defendant Wells Fargo used to foreclose do not purport to give it legal title. Plaintiffs'

Exhibit C, which at most states "all securities not classified as trading were classified as available for sale," adds no probative force to Plaintiffs' speculation. Docket No. 12-1 ("Plaintiffs' Ex. C").

Plaintiffs failed to provide any plausible factual allegation that Defendants acted unlawfully in pursuing a foreclosure proceeding or that Defendant Wells Fargo did not have valid legal title. For this reason, the Court finds that Plaintiffs have not alleged a plausible claim for relief.

### III. CONCLUSION

As the Court finds that Plaintiffs' claims are preempted by HOLA and that Plaintiffs failed to plead sufficient factual allegations. Defendants' motion to dismiss pursuant to rule 12(b)(6) is **GRANTED** with prejudice.

This order disposes of Docket No. 4. The Clerk is instructed to enter judgment and close the case.

**IT IS SO ORDERED**.

Dated: March 5, 2019

_____
EDWARD M. CHEN
United States District Judge